COMP
PATRICK C. CLARY, CHARTERED
Patrick C. Clary
Nevada Bar No. 53
Joseph D. Carney
Ohio Bar No. 10886
City Center West, Suite 410
7201 West Lake Mead Boulevard
Las Vegas, Nevada 89128
Telephone: 702.382.0813
FAX: 702.382.7277
Email: patclary@patclarylaw.com
        jdc@jdcarney.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

AMBER TROBRIDGE and
ERICA TROBRIDGE                          )   CASE NO. :
                                         )   DEPT. NO.:
            Plaintiffs,                   )
                                         )
vs                                       )   **VERIFIED COMPLAINT FOR MONEY**
                                         )   **DAMAGES DERIVATIVE CLAIM AND**
LARRY NEIL TROBRIDGE                     )   **REPLEVIN/WRIT OF POSSESSION**
                                         )   **AND JURY DEMAND ENDORSED**
            Defendant,                    )   **HEREIN**
and                                      )
                                         )
MICRO TOOL SERVICES, INC.                )
a Ohio corporation,                      )
                                         )
            Nominal Defendant            )
_____)

    The Plaintiff's, AMBER TROBRIDGE and ERICA TROBRIDGE,

("Plaintiffs" or "Amber" and/or "Erica"), by and through their

undersigned counsel, hereby submit the within Complaint against

the Defendant, LARRY NEIL TROBRIDGE ("Trobridge"), and Nominal

Defendant MICRO TOOL SERVICES, INC., A Ohio Corporation("Micro Tool")(together the "Defendants"), and as grounds therefor state as follows:

### FACTUAL BACKGROUND

1.  Amber and Erica make the following allegations as to themselves and upon information and belief as to all other matters; however, the Complaint states with particularity the facts on which the beliefs are formed. Matters herein involve facts particularly within the knowledge of the Defendants.

2.  Amber and Erica are both United States citizens. Amber is domiciled within the City of Henderson, in the State of Nevada. Erica is a temporary present resident of Madrid, Spain but is domiciled in San Francisco, in the State of California.

3.  Trobridge is a United States citizen with permanent place of residence within the City of Las Vegas, in the State of Nevada.

4.  Micro Tool is a closely held corporation both incorporated in and with headquarters within the State of Ohio and conducts its primary business within or near the Village of New Lebanon, within the State of Ohio.

5.  The claim for damages in this matter exceeds $75,000.

6.  Prior to June 2009, Amber (individually) and Erica (in her revocable trust) were each owners of six (6) shares of corporate stock of Micro Tool.  In June 2009, prior to the purported special meeting of shareholders discussed in further detail below, Erica removed her shares from her revocable trust, and both Amber and Erica transferred their shares so that they jointly owned twelve (12) shares as tenants-in-common.

7.  Micro Tool's principal shareholder is Trobridge, whose father (Amber and Erica's grandfather) originally created and ran Micro Tool prior to his death.  Prior to the purported reverse stock split discussed in further detail below, Trobridge owned ninety-nine (99) shares of Micro Tool.

8.  Besides Trobridge and Amber and Erica, the remaining shareholder of Micro Tool is Duane Leis.  Prior to the purported reverse stock split, Duane Leis ("Leis") owned nine (9) shares of corporate stock of Micro Tool.

9.  On information and belief, Trobridge is the President and sole director of Micro Tool.

10. Pursuant to Ohio Revised Code 1701.56, it is contrary to Ohio corporate law to have a single director when an Ohio corporation has more than one shareholder.

11. Over the course of running Micro Tool, Trobridge incurred significant debts and mismanaged the company to such an extent that additional revenue was required in order to satisfy both Trobridge's personal debt and loan or loans taken on behalf of Micro Tool with one or more lending institutions.

12. Trobridge misappropriated Micro Tool's assets for his own personal profit.

13. Prior to May 19, 2009, Trobridge, through his attorney, contacted both Amber and Erica in an attempt to buy their shares for approximately $24,647.05.

14. On or about May 19, 2009, Amber and Erica received notice of an intended shareholders' meeting on May 26, 2009, the purpose of which in part was to "vote on a one-for-nine reverse stock split [(hereinafter the "Reverse Stock Split")] including the payout of shareholders left with fractional shares." Amber and Erica objected to this notice because it was improperly served to Erica, who at the time was living outside the United States.

15. On or about May 26, 2009, Amber and Erica received a Revised Notice of Special Shareholder Meeting informing them of an intended shareholders' meeting on June 8, 2009.

16. Prior to June 8, 2009, Amber and Erica combined their holdings, as tenants-in-common, into a single holding of twelve (12) shares.

17. Prior to June 8, 2009, Amber and Erica submitted proxies containing their objections to the shareholders' meeting and notice of their combining their shares into one holding as tenants-in-common.

18. On information and belief, on June 9, 2009, Trobridge, the only shareholder present, purportedly held the shareholders' meeting, at which he refused to recognize Amber and Erica's joint shares as tenants in common and allegedly proceeded to conduct the Reverse Stock Split and purchase back Amber and Erica's shares. On information and belief, Leis, the only other Micro Tool shareholder, was not present and did not submit a proxy.

19. Following the June 9, 2009 Special Shareholder Meeting, it is Trobridge's position that Amber and Erica no longer own or control any shares of Micro Tool.

### JURISDICTION AND VENUE

20. Plaintiffs incorporate paragraphs 1 through 19 of the Complaint as if fully rewritten herein.

21. This Court has proper jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1965. This Court has pendant jurisdiction over the state law claims in this Complaint

pursuant to 28 U.S.C. § 1367(a) as they arise out of a

common nucleus of operative fact with the federal claims in

this Complaint.

22. This Court has proper venue pursuant to 18 U.S.C. § 1965

and 28 U.S.C. § 1391(b)(2).

**COUNT I**
**Securities Fraud in Violation of Section 10(b) of the**
**Securities Exchange Act of 1934 and Rule 10b-5 (all Defendants)**

23. Plaintiffs incorporate paragraphs 1 through 22 of the

Complaint as if fully rewritten herein.

24. 15 U.S.C. § 78j (Section 10(b)) in pertinent part provides:

> It shall be unlawful for any person,
> directly or indirectly, by the use of any
> means or instrumentality of interstate
> commerce or of the mails, or of any facility
> of any national securities exchange –
>
> . . .
>
>> (b) To use or employ, in connection with
>> the purchase or sale of any security
>> . . . any manipulative or deceptive
>> device . . .

Rule 10b-5 provides:

> It shall be unlawful for any person,
> directly or indirectly, by the use of any
> means or instrumentality of interstate
> commerce, or of the mails, or of any
> facility of any national securities
> exchange.
>
>> (a) to employ any device, scheme, or
>> artifice to defraud.
>>
>> (b) to make any untrue statement of a
>> material fact or to omit to state a
>> material fact necessary in order to
>> make the statements made, in the

> light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

25. The Notices of Special Shareholder Meeting were for special shareholders' meetings involving the purchase and selling of securities issued by Micro Tool. Defendants created and distributed these notices by the use of the mails, telephone, e-mail, and other means of interstate commerce.

26. The representations made by, and the information contained in, the Notices of Special Shareholder Meeting are material and intended by Defendants to be justifiably relied upon by persons, including Plaintiffs.

27. Pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, both of which apply to even face-to-face securities transactions so long as means of interstate commerce are used, Amber and Erica are entitled to full, fair, and adequate disclosure of all material facts related to Micro Tool and its plans. If they are not provided such, then Micro Tool and the corporate insiders are required to abstain from any transactions amounting to a purchase of their shares, a situation commonly referred to as "insider trading."

28. The Special Shareholders' Meeting involved the Reverse Stock Split and purchase for value of certain, purportedly remaining, fractional shares owned by Plaintiffs. These shares were improperly taken and repurchased by Micro Tool at a grossly undervalued price.

29. These actions and omissions by Defendants constitute fraud in connection with the purchase of securities. Defendants knew or acted in reckless disregard of the misstated or omitted material facts; therefore, Defendants acted with scienter.

30. Despite Micro Tool's purported repurchase of Amber and Erica's shares, no funds have ever been tendered to Amber or Erica in exchange for their shares.

31. Defendants' acts and/or omissions, as described above and throughout the Complaint, violate 15 U.S.C. § 78j and Rule 10b-5.

32. As a direct and proximate result of Defendants' violation of 15 U.S.C. § 78j and Rule 10b-5, Plaintiffs are damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

## COUNT II
### Breach of Fiduciary Duty
**(Derivative Claim against Trobridge as Officer and Director)**

33. Plaintiffs incorporate paragraphs 1 through 32 of the Complaint, as if fully rewritten herein.

34. Micro Tool's officer(s), including Trobridge, and Micro Tool's director(s), including Trobridge, owed fiduciary duties to Micro Tool, including the duty of care, duty of loyalty, duty of full disclosure, and duty to avoid self dealing.

35. Micro Tool's officer(s), including Trobridge, and director(s), including Trobridge, breached their fiduciary duties by among other things:

   a. Allowing Trobridge to continuously sell items, over the Internet, that were purchased and owned by Micro Tool and then keep the subsequent proceeds;

   b. Allowing Trobridge to use Micro Tool's assets to purchase items for his personal household use;

   c. Allowing Trobridge to establish an income from Micro Tool for his mother, who provided no services to Micro Tool, for the purposes of keeping said income for himself to avail himself of his mother's lower tax bracket;

   d. Allowing Trobridge to place his now-ex-wife, Claudia Trobridge, who provided no services to Micro Tool, on

the Micro Tool payroll while they were married and to continue to pay her, as an employee, for alimony purposes, at the rate of approximately $600 per week for four years;

e. Allowing Trobridge to place certain individuals on the Micro Tool payroll, when such individuals provided no services to Micro Tool and instead provided personal services to Trobridge at his Nevada home;

f. Allowing Trobridge to collect an annual salary of $300,000 per year when he was neither a full-time, nor significant part-time, employee, rather than convey said amount as dividends to all of Micro Tool's shareholders;

g. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, and to the primary personal benefit of Trobridge;

h. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, when it was known or should have been known that Micro Tool and its shares were worth significantly more;

10

      i. Failing fully and accurately to disclose the financial status of Micro Tool;

      j. Failing fully and accurately to disclose Trobridge's improper use of corporate assets; and

      k. Failing to fully and accurately disclose the true fair market value of Micro Tool.

36. At all times relevant to this Count, Amber and Erica were shareholders of Micro Tool.

37. This is not a collusive action to confer jurisdiction that this Court would otherwise lack.

38. Demand on Micro Tool to initiate a lawsuit would be futile as Trobridge is the president, sole director, and majority shareholder of Micro Tool and he would, in all certainty, use those positions to prevent Micro Tool from bringing suit against him.

39. As a direct and proximate result of Defendant's actions, Micro Tool was damaged, and continues to be damaged, in excess of $75,000.

40. As a direct and proximate result of Defendant's actions, Amber and Erica, as Micro Tool shareholders, were damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

## COUNT III
### Corporate Waste
**(Derivative Claim against Trobridge as Officer and Director)**

41. Plaintiffs incorporate paragraphs 1 through 40 of the Complaint as if fully rewritten herein.

42. Micro Tool's officer(s), including Trobridge, and director(s), including Trobridge, were not entitled to waste the assets of Micro Tool.

43. Micro Tool's officer(s), including Trobridge, and director(s), including Trobridge, wasted the assets of Micro Tool by among other things:

   a. Allowing Trobridge to continuously sell items, over the Internet, that were purchased and owned by Micro Tool and then keep the subsequent proceeds;

   b. Allowing Trobridge to use Micro Tool's assets to purchase items for his personal household use;

   c. Allowing Trobridge to establish an income from Micro Tool for his mother, who provided no services to Micro Tool, for the purposes of keeping said income for himself to avail himself of his mother's lower tax bracket;

   d. Allowing Trobridge to place his now-ex-wife, Claudia Trobridge, who provided no services to Micro Tool, on the Micro Tool payroll while they were married and to continue to pay her, as an employee, for alimony

purposes, at the rate of approximately $600 per week for four years;

e. Allowing Trobridge to place certain individuals on the Micro Tool payroll, when such individuals provided no services to Micro Tool, and instead provided personal services to Trobridge at his Nevada home;

f. Allowing Trobridge to collect an annual salary of $300,000 per year when he was neither a full-time, nor significant part-time, employee, rather than convey said amount as dividends to all of Micro Tool's shareholders;

g. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, and to the primary personal benefit of Trobridge; and

h. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, and for no valid business purpose, when it was known or should have been known that Micro Tool and its shares were worth significantly more.

44. At all times relevant to this Count, Amber and Erica were shareholders of Micro Tool.

45. This is not a collusive action to confer jurisdiction that this Court would otherwise lack.

46. Demand on Micro Tool to initiate a lawsuit would be futile as Trobridge is the president, sole director, and majority shareholder of Micro Tool and he would, in all certainty, use those positions to prevent Micro Tool from bringing suit against him.

47. As a direct and proximate result of Defendant's actions, Micro Tool was damaged, and continues to be damaged, in excess of $75,000.

48. As a direct and proximate result of Defendant's actions, Amber and Erica, as Micro Tool shareholders, were damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

### COUNT IV
### Breach of Fiduciary Duty
### (Controlling Shareholder Trobridge)

49. Plaintiffs incorporate paragraphs 1 through 48 of the Complaint as if fully rewritten herein.

50. Trobridge, as controlling shareholder of Micro Tool, by virtue of his ownership of at or about ninety-nine (99) shares out of at or about one hundred twenty (120) shares issued and outstanding, owed fiduciary duties to the

minority shareholders of Micro Tool, including Amber and Erica. Such duties included the duty of care, duty of loyalty, duty of full disclosure, and duty to avoid self dealing.

51. Trobridge breached his fiduciary duties by among other things:

    a. Continuously selling items over the Internet that were purchased and owned by Micro Tool and then keeping the subsequent proceeds;

    b. Using Micro Tool's assets to purchase items for his personal household use;

    c. Providing an income from Micro Tool for his mother, who provided no services to Micro Tool, for the purposes of keeping said income for himself to avail himself of his mother's lower tax bracket;

    d. Placing his now-ex-wife, Claudia Trobridge, who provided no services to Micro Tool, on the Micro Tool payroll while they were married and to continuing to pay her, as an employee, for alimony purposes, at the rate of approximately $600 per week for four years;

    e. Placing certain individuals on the Micro Tool payroll, when such individuals provided no services to Micro Tool, and instead provided personal services to Trobridge at his Nevada home;

f. Collecting an annual salary of $300,000 per year when he was neither a full-time, nor significant part-time, employee, rather than convey said amount as dividends to all of Micro Tool's shareholders;

g. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, and to the primary personal benefit of Trobridge;

h. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, when it was known or should have been known that Micro Tool and its shares were worth significantly more;

i. Failing to fully and accurately disclose the financial status of Micro Tool;

j. Failing to fully and accurately disclose Trobridge's improper use of corporate assets;

k. Failing to fully and accurately disclose the true fair market value of Micro Tool;

l. Purporting to amend the Code of Regulations of Micro Tool to provide for one director, in violation of Ohio Revised Code § 1701.56; and

m. Maintaining a single director in violation of Ohio Revised Code § 1701.56.

52. Trobridge performed the foregoing acts and omissions for his own personal benefit, rather than the benefit of Micro Tool and all of its shareholders.

53. As a direct and proximate result of Defendant's breach, Plaintiffs are damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

**COUNT V**
**Corporate Waste**
**(Controlling Shareholder Trobridge)**

54. Plaintiffs incorporate paragraphs 1 through 53 of the Complaint as if fully rewritten herein.

55. Trobridge, as controlling shareholder of Micro Tool, by virtue of his ownership of at or about ninety-nine (99) shares out of at or about one hundred twenty (120) shares issued and outstanding, was not entitled to waste corporate assets to the detriment of the minority shareholders of Micro Tool, including Amber and Erica.

56. Trobridge wasted corporate assets by among other things:

a. Continuously selling items over the Internet that were purchased and owned by Micro Tool and then keeping the subsequent proceeds;

b. Using Micro Tool's assets to purchase items for his personal household use;

c. Providing an income from Micro Tool for his mother, who provided no services to Micro Tool, for the purposes of keeping said income for himself to avail himself of his mother's lower tax bracket;

d. Placing his now-ex-wife, Claudia Trobridge, who provided no services to Micro Tool, on the Micro Tool payroll while they were married and to continuing to pay her, as an employee, for alimony purposes, at the rate of approximately $600 per week for four years;

e. Placing certain individuals on the Micro Tool payroll, when such individuals provided no services to Micro Tool, and instead provided personal services to Trobridge at his Nevada home;

f. Collecting an annual salary of $300,000 per year when he was neither a full-time, nor significant part-time, employee, rather than convey said amount as dividends to all of Micro Tool's shareholders;

g. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, and to the primary personal benefit of Trobridge; and

18

h. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, when it was known or should have been known that Micro Tool and its shares were worth significantly more.

57. As a direct and proximate result of Defendant's waste, Plaintiffs were damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

### COUNT VI
### Aiding and Abetting Breaches of Fiduciary Duty and Corporate Waste
### (Defendant Micro Tool)

58. Plaintiffs incorporate paragraphs 1 through 57 of the Complaint as if fully rewritten herein.

59. Defendant Micro Tool has a duty to refrain from knowingly providing substantial assistance to another person in breaching that other person's fiduciary duties.

60. Micro Tool was aware of the acts by its officer(s), director(s), and controlling shareholder which violated their fiduciary duties and constituted corporate waste.

61. Micro Tool assisted its officer(s), director(s), and controlling shareholder in violating their fiduciary duties

and wasting the assets of the corporation by among other things:

   a. Allowing Trobridge to continuously sell items, over the Internet, that were purchased and owned by Micro Tool and then keep the subsequent proceeds;

   b. Allowing Trobridge to use Micro Tool's assets to purchase items for his personal household use;

   c. Allowing Trobridge to establish an income from Micro Tool for his mother, who provided no services to Micro Tool, for the purposes of keeping said income for himself to avail himself of his mother's lower tax bracket;

   d. Allowing Trobridge to place his now-ex-wife, Claudia Trobridge, who provided no services to Micro Tool, on the Micro Tool payroll while they were married and to continue to pay her, as an employee, for alimony purposes, at the rate of approximately $600 per week for four years;

   e. Allowing Trobridge to place certain individuals on the Micro Tool payroll, when such individuals provided no services to Micro Tool, and instead provided personal services to Trobridge at his Nevada home;

   f. Allowing Trobridge to collect an annual salary of $300,000 per year when he was neither a full-time, nor

significant part-time, employee, rather than convey said amount as dividends to all of Micro Tool's shareholders;

g. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, and to the primary personal benefit of Trobridge;

h. Allowing for the alleged or attempted compulsory reverse buy back of Plaintiffs' shares at a value substantially below the fair market value, for no valid business purpose, when it was known or should have been known that Micro Tool and its shares were worth significantly more;

i. Failing to fully and accurately disclose the financial status of Micro Tool;

j. Failing to disclose Trobridge's improper use of corporate assets;

k. Failing to fully and accurately disclose the true fair market value of Micro Tool;

l. Purporting to amend the Code of Regulations of Micro Tool to provide for one director, in violation of Ohio Revised Code § 1701.56; and

m. Allowing the other acts and practices as alleged herein.

62. As a direct and proximate result of Defendant Micro Tool's aiding and abetting, Plaintiffs are damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

**COUNT VII**
**Breach of Fiduciary Duty**
**(Trobridge, as Trustee of**
**The Revocable Living Trust of Erica Trobridge)**

63. Plaintiffs incorporate paragraphs 1 through 62 of the Complaint as if fully rewritten herein.

64. Trobridge, as trustee of The Revocable Living Trust of Erica Trobridge, under an agreement dated September 20, 1996, owed fiduciary duties to Erica, the beneficiary of said trust.

65. Trobridge, prior to and at the Special Meeting of the Shareholders of Micro Tool, on or about June 9, 2009, acted as trustee of The Revocable Living Trust of Erica Trobridge.

66. Trobridge breached his fiduciary duties as trustee of The Revocable Living Trust of Erica Trobridge by among other things:

a. Failing to disclose material facts regarding Micro Tool to the trust beneficiary;

b. Voting against the interests of the trust beneficiary, specifically, in such a matter as to rid the beneficiary of shares through the Reverse Stock Split;

c. Acting against the best interests of the beneficiary in contravention of his duty to act in accordance with the highest standard of integrity; with utmost good faith; and with scrupulous openness, fairness, and honesty;

d. Abusing his relationship of trust or confidence for personal aggrandizement; and

e. Other acts and practices as alleged herein.

67. As a direct and proximate result of Defendant's violation, Erica is damaged, and continues to be damaged, in excess of $75,000. Erica is entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

## COUNT VIII
### Conversion (All Defendants)

68. Plaintiffs incorporate paragraphs 1 through 67 of the Complaint as if fully rewritten herein.

69. Trobridge wrongfully controlled or exercised dominion over property belonging to others, specifically Micro Tool and,

by virtue of share ownership, the shareholders, including but not limited to Amber and Erica, inconsistent with or in denial of the rights of said owners.

70. Micro Tool and its director(s), officer(s), controlling shareholder, managers, and members, including Trobridge, knowingly allowed or enabled said conversion to proceed and continue to the detriment of the Plaintiffs.

71. Said conversion involved, among others:

    a. The selling of items purchased and owned by Micro Tool, on one or more Internet auction sites, for Trobridge's own personal profit;

    b. Placing Trobridge's mother on the Micro Tool payroll for the purposes of Trobridge's own personal profit;

    c. Placing Trobridge's ex-wife Claudia Trobridge on the Micro Tool payroll for the purposes of Trobridge's own personal profit; and

    d. Such other acts and practices as alleged herein.

72. As a direct and proximate result of Defendants' violation, Plaintiffs are damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

## COUNT IX
### Unjust Enrichment (All Defendants)

73. Plaintiffs incorporate paragraphs 1 through 72 of the Complaint as if fully rewritten herein.

74. Micro Tool and all or some of its director(s), officer(s), and controlling shareholder, including Trobridge, obtained benefits bestowed upon them, which were then used to unjustly enrich themselves.

75. This unjust enrichment includes, but is not limited to:

   a. The use of a reverse stock split to allegedly effectuate or attempt a "buyout" of remaining shareholders to consolidate share ownership to a few individuals, including but not limited to Trobridge and Leis, with knowledge that the remaining shares would be sold at higher prices than that paid to minority shareholders, specifically Amber and Erica;

   b. The use of corporate-owned funds and shareholder dividends, for purchase of various personal services to and for Trobridge's personal benefit; and

   c. Such other acts and practices as alleged herein.

76. As a direct and proximate result of Defendants' violation, Plaintiffs are damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory

and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

### COUNT X
### Excess Compensation (Trobridge)

77. Plaintiffs incorporate paragraphs 1 through 76 of the Complaint as if fully rewritten herein.

78. Trobridge provided himself with income of approximately $300,000 annually from Micro Tool.

79. Trobridge was neither a full-time, nor significant part-time, employee of Micro Tool for the time period this Complaint encompasses.

80. The compensation provided Trobridge is disproportionately excessive in comparison to the responsibilities and contributions of Trobridge on behalf of Micro Tool's day-to-day operations.

81. Such excess compensation represents dividends which should have been distributed to all the shareholders.

82. As a direct and proximate result of Defendant's violation, Plaintiffs are damaged, and continue to be damaged, in excess of $75,000. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

## COUNT XI
### Violation of 18 U.S.C. § 1962
### The Racketeer Influenced and Corrupt Organizations Act
### "R.I.C.O."
### (All Defendants)

83. Plaintiffs incorporate paragraphs 1 through 82 of the Complaint as if fully rewritten herein.

84. The full scope of Defendants' theft and wrongdoing is unknown and Plaintiffs' investigation of same continues. As the nature of Defendants' conduct and the information concerning same is uniquely in possession of Defendants and their accomplices, known and unknown, the full extent of their fraudulent and corrupt enterprise and the participants therein will not be known until full and complete discovery is had.

**R.I.C.O. Persons**

85. Trobridge, as an individual, and as an officer of Micro Tool, along with Micro Tool, are each a "person" within the meaning of 18 U.S.C. §1961(3).

**R.I.C.O. Enterprise**

86. For the purpose of 18 U.S.C. §1962(c), Trobridge, as an individual, and as an officer of Micro Tool, along with Micro Tool, comprise an association-in-fact enterprise (hereinafter, "the Enterprise") within the meaning of 18 U.S.C. §1961(4).

87. Through the Enterprise, Trobridge, as an individual, and as an officer of Micro Tool, along with Micro Tool, conducted, directed, and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity, as set forth herein, for the purpose of conducting the unlawful activities described herein.

88. For the purpose of 18 U.S.C. §1962(c), Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool were each employed by and/or associated with the Enterprise, and had authority within the Enterprise and/or conducted or participated in the unlawful conduct set forth herein through the Enterprise.

89. Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool, as the principal architects of the unlawful and fraudulent conduct set forth herein, conducted the Enterprise's affairs through the pattern of racketeering activity set forth herein.

**Effect on Interstate Commerce**

90. The association-in-fact of Trobridge, as an individual, and as an officer of Micro Tool, along with Micro Tool, engages in and effects interstate commerce by maintaining contacts and conducting economic and other activities throughout the United States, in furtherance of the Enterprise.

**Predicate Acts of Racketeering Activity — In General**

91. Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool, conducted the Enterprise's affairs through a pattern of predicate acts, including the commission of numerous violations of the Federal Mail Fraud Statute, 18 U.S.C. § 1341; the Federal Wire Fraud Statute, 18 U.S.C. § 1343; Transportation of Stolen Goods over Interstate Lines, 18 U.S.C. § 2314; and Sale of Stolen Goods over Interstate Lines, 18 U.S.C. § 2315.

**Mail and/or Wire Fraud**

92. Among other predicate acts, Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool, knowingly used or caused to be used the mails and/or wire communications in violation of 18 U.S.C. §§ 1341 & 1343 in furtherance of a scheme or artifice to defraud, and with specific intent to defraud. Specifically, Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool, used or caused to be used the mails and/or wire communications in connection with and in furtherance of repeated conversion of funds of Micro Tool over many years, including:

    a. The sale of items purchased and owned by Micro Tool, on one or more Internet auction sites, for Trobridge's own personal profit;

     b. The placement of Trobridge's mother on the Micro Tool payroll for the purposes of Trobridge's own personal profit;

     c. The placement of Trobridge's ex-wife Claudia Trobridge on the Micro Tool payroll for the purposes of Trobridge's own personal profit; and

     d. Such other acts and practices as alleged herein.

93. On information and belief, in 2009, Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool, participated in the Enterprise, which caused W-2s for 2008 to be mailed to Trobridge's mother which falsely indicated that Trobridge's mother had received income from Micro Tool.  Plaintiffs believe these W-2s were intended to further the Defendants' scheme to defraud the United States government of tax revenues by reporting income received by Trobridge to individuals with a lower tax rate than him.

94. On information and belief, Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool, acted in violation of 18 U.S.C. §1341 and/or 18 U.S.C. §1343 in furtherance of a scheme or artifice to defraud, and with specific intent to defraud, included but are not limited to: (a) maintaining contacts and conspiring by mail and/or wire in furtherance of the aforementioned fraudulent activities; (b) forwarding fraudulent invoices/timeslips

for compensation of work by individuals not employed nor actually performing the work indicated, for Trobridge's personal profit; (c) forwarding and exercising consents, resolutions and agreements by mail and/or wire in connection with and/or in furtherance of the above named frauds; and (d) opening domestic bank accounts by mail and/or wire in connection with and in furtherance of, selling company resources on eBay for personal profit.

95. On or about May 19, 2009, in furtherance of the Reverse Stock Split scheme, Trobridge, as an individual, and as an officer of Micro Tool, and Micro Tool, participated in the Enterprise, which caused a notice of an intended shareholders meeting to be sent to Plaintiffs via email and postal mail. Plaintiffs believe this notice was intended to further Defendants' scheme to defraud Plaintiffs of their shares of Micro Tool.

96. On or about May 26, 2009, Trobridge and Micro Tool participated in the Enterprise, which caused a Revised Notice of Special Shareholder Meeting to be sent to Plaintiffs via email and postal mail. Plaintiffs believe this revised notice was intended to further the Defendants' scheme to defraud Plaintiffs of their shares of Micro Tool.

**Transportation and/or Sale of Stolen Goods over Interstate Lines**

97. On multiple occasions between the year 2000 and the filing of this Complaint, Trobridge knowingly and improperly stole, converted, or took by fraud multiple items of personal property from Micro Tool. Upon information and belief, Trobridge misappropriated Micro Tool cash and converted said cash into tangible items, including such items as clothing, watches, and hats, and sold these items in Trobridge's own name on various Internet auction sites. These goods were purchased for the benefit of, or on behalf of, Micro Tool with Micro Tool funds. The total value of these items exceeds $5,000.

98. On information and belief, Trobridge then sold the goods that he had stolen, converted, or taken by fraud from Micro Tool on eBay and/or other Internet auction sites in his own name and for his own personal profit.

99. These items properly belonged to Micro Tool and the only proper use thereof was for the benefit of the company and its shareholders. This was usurped by the Defendants' scheme.

100. On information and belief, Defendants subsequently caused these stolen items to be transported to the purchasers via

United States postal mail, commercial mail, or other means of transport in interstate commerce.

## Injury to Plaintiffs' Property

101. The conduct of the Enterprise by Trobridge, as an individual and as an officer of Micro Tool, and Micro Tool, in the manner described above injured Plaintiffs by (i) taking goods from Micro Tool whose proper use was for the benefit of its shareholders as realized profits and dividends and thereby devaluing their interest in Micro Tool and (ii) allegedly redeeming said interest for less than fair market value.

## Damages

102. As a direct and proximate result of Defendants' conduct in violation of 18 USC § 1962, Plaintiffs' business and property are damaged, subject to RICO damages, and continue to be damaged in excess of $75,000; therefore Plaintiffs are entitled to treble damages in excess of $225,000 and their costs in bringing and pursuing this suit, and attorneys fees where applicable.

### COUNT XII
### Claim for Replevin

103. Plaintiffs incorporate paragraphs 1 through 102 of the Complaint as if fully rewritten herein.

104. Plaintiffs are the rightful owners of property in part described in this Complaint, specifically those shares purportedly obtained by Micro Tool through the Reverse Stock Split and dividends improperly retained and expended on behalf of Trobridge, and do hereby repeat their rightful demand for the return of said property.

105. Defendants have failed, and/or refused, to return the aforementioned property to Plaintiffs.

106. Plaintiffs are entitled to Replevin/Writ of Possession and the return of said property to the Plaintiffs without further delay.

## COUNT XIII
### Declaratory Judgment

107. Plaintiffs incorporate paragraphs 1 through 106 of the Complaint as if fully rewritten herein.

108. On or about May 26, 2009, Trobridge caused a Revised Notice of Special Shareholder Meeting to be held June 8, 2009 to be sent to Plaintiffs via email and postal mail. This revised notice was intended to further Trobridge's and Micro Tool's scheme to defraud Plaintiffs of their shares of Micro Tool.

109. On information and belief, no Special Shareholders Meeting was actually held on June 8, 2009. Instead, a meeting was

held on June 9, 2009, for which no notice was provided to the shareholders.

110. On information and belief, Trobridge was the only shareholder present at the Special Shareholders' Meeting held on June 9, 2009.

111. The Special Shareholders' Meeting was called for an oppressive purpose, and was called and conducted in breach of the fiduciary duties of the officer(s), director(s), and majority shareholder of Micro Tool.

112. The Special Shareholders' Meeting was called in order to effectuate the Reverse Stock Split. Although Ohio law requires a business purpose for any reverse stock split, there was no such business purpose for the Reverse Stock Split.

113. Prior to the Special Shareholders' Meeting, Amber and Erica combined their holdings into a single holding of twelve (12) shares, as tenants-in-common.

114. Trobridge failed to recognize the ownership interests in tenancy in common of Amber and Erica.

115. Plaintiffs request that this Court issue a declaratory judgment holding that the Special Shareholders' Meeting held on or about June 8 or 9, 2009, was invalid and all actions taken at that meeting, including the Reverse Stock Split, are null and void.

116. In the alternative, Plaintiffs request that this Court issue a declaratory judgment holding that Amber and Erica validly combined their shares into one holding of twelve (12) shares as tenants-in-common prior to the Reverse Stock Split and, therefore, the Reverse Stock Split resulted in their holding one and one-third ($1 \frac{1}{3}$) share as tenants-in-common.

## COUNT XIV
### Piercing the Corporate Veil

117. Plaintiffs incorporate paragraphs 1 through 116 of the Complaint as if fully rewritten herein.

118. Trobridge is Micro Tool's majority shareholder and is, on information and belief, Micro Tool's president and sole director, in contravention of Ohio law.

119. As set forth above, Trobridge exercised domination and complete control over Micro Tool, such that Micro Tool effectively had no separate mind, will, or existence of its own.

120. As set forth above, Trobridge exercised his domination of, and complete control over, Micro Tool in such a manner as to commit fraud against the other shareholders, including Plaintiffs.

121. As a direct and proximate result of Trobridge's domination of, and complete control over, Micro Tool, Plaintiffs have

suffered injury and unjust loss; accordingly, the corporate form may be disregarded and Trobridge may be held liable for Micro Tool's acts and/or admissions for damages in excess of $75,000.00. Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

### COUNT XV
### Piercing the Corporate Veil

122. Plaintiffs incorporate paragraphs 1 through 121 of the Complaint as if fully rewritten herein.

123. Trobridge is Micro Tool's majority shareholder, and is, on information and belief, Micro Tool's president and sole director, in contravention of Ohio law.

124. As set forth above, Trobridge exercised domination and complete control over Micro Tool, such that Micro Tool effectively had no separate mind, will, or existence of its own and was merely Trobridge's alter ego.

125. As set forth above, Trobridge exercised his domination of, and complete control over, Micro Tool in such a manner as to commit fraud against the other shareholders, including Plaintiffs.

126. Given Trobridge's domination of and complete control over Micro Tool and his use of Micro tool in the various improper ways alleged throughout this Complaint, adherence

to the corporate fiction that Micro Tool is a separate entity from Trobridge would sanction fraud and promote injustice.

127. As a direct and proximate result of Trobridge's domination of, and complete control over, Micro Tool, Plaintiffs have suffered injury and unjust loss; accordingly, the corporate form may be disregarded and Micro Tool may be held liable for Trobridge's acts and/or admissions for damages in excess of $75,000.00.   Plaintiffs are entitled to compensatory and punitive damages, interest, attorneys' fees and costs, and all other legal and equitable relief.

## COUNT XVI
### Punitive Damages

128. Paragraphs 1 through 127 of the Complaint are incorporated herein as if fully rewritten.

129. Defendants' repeated acts and/or omissions, described throughout the Complaint, are grossly negligent, reckless, intentional, aggravated, egregious, and/or conducted with knowledge of their harmful effects towards Plaintiffs.

130. Defendants' acts and/or omissions, described throughout the Complaint, were done knowingly, intentionally, and/or with an intentional disregard to the facts that created a high probability of injury to Plaintiffs' financial condition and rights under law.

131. Defendants' acts and/or omissions, described throughout the Complaint, were undertaken with deliberate indifference to the high probability of injury to Plaintiffs' rights.

132. Defendants' acts and/or omissions, described throughout the Complaint, were aggravated, egregious, outrageous, were undertaken with evil motive or reckless indifference to Plaintiffs' rights.

133. Defendants' acts and/or omissions, described throughout the Complaint, were willful and wanton, demonstrated a conscience awareness and/or conscience indifference that their acts injured Plaintiffs.

134. Defendants' acts and/or omissions were done with scienter.

135. Defendants' acts and/or omissions constitute breach of fiduciary duties, malice, aggravated or egregious fraud, and/or oppression.

136. Punitive damages are available under: (1) federal securities law; and (2) Ohio law (Ohio Revised Code § 2315.21), with all applicable caps and limitations; and (3) Nevada law (Nevada Revised Statute 42.005) with all applicable caps and limitations.

137. The acts and/or omissions set forth in this Complaint entitle Plaintiffs to punitive damages, in an amount established at trial, estimated to be in excess of $100,000.

### COUNT XVII
### Appointment of a Receiver

138. Plaintiffs incorporate paragraphs 1 through 137 of the Complaint as if fully rewritten herein.

139. As demonstrated in the foregoing counts of this Complaint, Plaintiffs have multiple valid claims against Defendants.

140. As demonstrated in the foregoing counts of this Complaint, Trobridge has committed multiple acts of fraud, corporate abuse, and domination, in connection with his management of Micro Tool.

141. Defendants' ongoing mismanagement of Micro Tool makes it probable that the assets of Micro Tool will be lost, concealed, or squandered, thus irreparably harming the other shareholders of Micro Tool, including Plaintiffs.

142. The injury to Defendants by the appointment of a receiver to manage Micro Tool would be minimal. Trobridge would only be prevented from committing further and ongoing fraud, breaches of fiduciary duty, and conversion and Micro Tool would actually benefit by the appointment of an independent receiver to manage it.

143. Therefore, Plaintiffs request that this Court appoint a receiver to manage Micro Tool during the pendency of this action.

144. Plaintiffs also request that this Court order such receiver to continue in office after judgment in this case to bring action in the name of Micro Tool against Trobridge to recover the losses incurred due to Trobridge's fraud, mismanagement, breach of fiduciary duties, waste, conversion, and any other similar types of acts discovered by the receiver or through discovery.

145. Plaintiffs also request that this Court order that, upon conclusion of this action and any actions instituted by the receiver, the receiver sell Micro Tool at auction and distribute the proceeds pro-rata to the shareholders, and that any and all monies due Trobridge be held in trust to address the claims set forth herein.

### RIGHT OF APPRAISAL

In the alternative, if this Court finds that the Reverse Stock Split was valid and Plaintiffs' fractional shares, whether two-thirds (2/3) of a share from each individual or one-third (1/3) of a share from their joint holding as tenants-in-common, were properly redeemed, Plaintiffs hereby demand right of appraisal for the determination of fair market value of Micro Tool and its applicable shares as of the redemption, the subject matter in part of this Complaint.

## ACCOUNTING

As demonstrated above, Trobridge has committed multiple acts of fraud, corporate abuse, and domination in connection with his management of Micro Tool. Trobridge's continual fraud, corporate abuse, waste, conversion, and mismanagement of Micro Tool makes it probable that the assets of Micro Tool have been lost, concealed, squandered, dispersed, and/or distributed. Thus, a suitable accounting will be necessary to track and identify the assets of Micro Tool that Trobridge has lost, concealed, squandered, dispersed, and/or distributed. Accordingly, the Plaintiffs request that this Court issue an Order requiring Defendants Micro Tool and Trobridge to submit a verified, sworn accounting that identifies, since January 1, 2000, their assets and liabilities, all bank accounts maintained in their name or for their benefit, and all funds received or distributed by Defendants.

## TRIAL BY JURY

Plaintiffs hereby demand trial by Jury.

**WHEREFORE,** Plaintiffs Amber Trobridge and Erica Trobridge pray for the following relief:

A.  That Plaintiffs be granted judgment on all Counts in the Complaint;

B.  That Plaintiffs be awarded compensatory damages in excess of $75,000;

C.  That Plaintiffs be awarded treble damages in excess of $225,000, their costs in bringing and pursuing this suit, and attorneys' fees, on Count XI of the Complaint;

D.  That Plaintiffs be awarded interest, attorneys' fees, and costs;

E.  That Plaintiffs be awarded punitive damages estimated in excess of $100,000 on all applicable counts;

F.  That this Court issue an Order appointing a receiver as requested in this Complaint, or in the alternative, that this Court issue an Order determining the fair market value of Micro Tool and its shares as of the date of the Reverse Stock Split;

G.  That this Court issue an Order requiring Defendants Micro Tool Services, Inc. and Larry Neil Trobridge to submit a verified, sworn accounting that identifies, since January 1, 2000, their assets and liabilities, all bank accounts maintained in their name or for their benefit, and all funds received or distributed by Defendants; and

. . .

. . .

H.   All other relief, both legal and equitable, as this
     Court finds appropriate and just.

                                    Respectfully submitted,

                                    /s/Patrick C. Clary
                                    Patrick C. Clary
                                    PATRICK C. CLARY, CHARTERED
                                    7201 West Lake Mead Boulevard,
                                    Suite 410
                                    Las Vegas, Nevada 89128
                                    Phone: 702-382-0813
                                    Fax: 702-382-7277
                                    E-Mail:
                                    PatClary@PatClaryLaw.com

                                    Attorneys for Plaintiffs Amber
                                    and Erica Trobridge

STATE OF Nevada )
)ss.:
COUNTY OF Clark )

I, Amber Trobridge, having been first duly sworn depose and state as follows:

That I am one of the Plaintiffs in the above-captioned case and I have read the foregoing Verified Complaint for Money Damages Derivative Claim and Replevin/Writ of Possession and Jury Demand Endorsed Herein and the allegations contained therein are true and correct to the best of my knowledge except for those matters based upon information and belief and as to those matters I believe them to be true.

_____
Amber Trobridge

SUBSCRIBED AND SWORN to before me this 27 day of July 2010.

_____
Notary Public in and for
Said County and State

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
KELLY GEHRING
No: 07-4292-1
My Appointment Expires Aug. 7, 2011

STATE OF  Georgia   )
                                    )ss.:
COUNTY OF  Fulton   )

I, Erica Trobridge, having been first duly sworn depose and state as follows:

That I am one of the Plaintiffs in the above-captioned case and I have read the foregoing Verified Complaint for Money Damages Derivative Claim and Replevin/Writ of Possession and Jury Demand Endorsed Herein and the allegations contained therein are true and correct to the best of my knowledge except for those matters based upon information and belief and as to those matters I believe them to be true.

_____
Erica Trobridge

SUBSCRIBED AND SWORN to before me this 26 day of July 2010.

_____
Notary Public in and for
Said County and State

TASHONIA PITTMAN
NOTARY PUBLIC
Fulton County - State of Georgia
My Comm. Expires June 15, 2013

46